IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

CECIL L. GROOMES,                         ✗
                                          ✗
         Plaintiff,                       ✗
                                          ✗
vs.                                       ✗        No. 08-2028-An/P
                                          ✗
TONY PARKER, et al.,                      ✗
                                          ✗
         Defendants.                      ✗
                                          ✗

_____

ORDER ASSESSING $350 CIVIL FILING FEE
ORDER OF DISMISSAL
ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

_____

On January 7, 2008, Plaintiff Cecil L. Groomes, Tennessee

Department of Correction ("TDOC") prisoner number 280118, an inmate

at the West Tennessee State Penitentiary ("WTSP")[1] in Henning,

Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983.

(Docket Entry ("D.E.") 1.) The Clerk shall record the defendants as

WTSP Warden Tony Parker, TDOC Commissioner George Little, WTSP

Deputy Warden Henry Steward, WTSP Unit Manager Margaret Smith, WTSP

Counselor Rosalyn Barnett, WTSP Correctional Officer Chad Flowers,

_____

[1]    The word "prison" is used in this order to refer to all places of
confinement or incarceration, including jails, penal farms, detention and
classification facilities, or halfway houses.

WTSP Sergeant Moffitt, and WTSP Inmate Relations Coordinator Famous Hurdle.

I.  <u>Assessment of Filing Fee</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $350 required by 28 U.S.C. § 1914(a). The <u>in forma pauperis</u> statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, Plaintiff has properly completed and submitted an <u>in forma pauperis</u> affidavit bearing a certification by the trust fund officer and a trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in Plaintiff's account and forward them

to the Clerk of Court. On each occasion that funds are subsequently credited to Plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that, after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $350.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify Plaintiff's name and the case number on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined, he shall provide the officials at the new prison with a copy of this order.

If Plaintiff fails to abide by these or any other requirements of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the WTSP to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

## II.  Analysis of Plaintiff's Claims

The seventy-five (75) page complaint submitted by Plaintiff is difficult to decipher. The complaint consists of various handwritten documents, several of which contain factual recitations, and the allegations are not presented in chronological order. Moreover, it appears that the complaint alleges numerous, unrelated claims against multiple defendants, in violation of Fed. R. Civ. P. 18(a) and 20(a).[2] The Court will, in this instance only,

---

[2]    The Seventh Circuit has cautioned district courts against permitting prisoners to file multi-claim, multi-defendant suits, explaining that

(continued...)

4

exercise its discretion to consider all the claims raised by Plaintiff's complaint, to the extent they can readily be discerned.

Plaintiff has been a maximum security inmate in involuntary administrative segregation ("IAS") at the WTSP since June 1, 2004. He has not had any disciplinary write ups during the three years he has been housed at the WTSP. (D.E. 1 at 14.) Plaintiff admits he is a member of an unspecified gang. (Id. at 30-31.) Plaintiff alleges that his rights to due process have been violated because his IAS placement has not been reviewed every month, as required by TDOC policy. (Id. at 35-40.) Defendants Barnett and Hurdle allegedly have neglected, from time to time, to perform the required review, and they allegedly falsified documents indicating the reviews have been completed. (Id. at 35-37.) Defendant Parker allegedly signed off on the falsified reviews, despite his receipt of a letter from Plaintiff advising that the reviews had not been performed. (Id. at 37, 39-40.)

In August, 2007, Plaintiff applied for the position of "kitchen man" in his unit of the WTSP. (Id. at 19, 26.) Defendant

---

[2]    (...continued)
[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g). George was trying not only to save money but also to dodge that rule. He hoped that if even 1 of his 50 claims were deemed non-frivolous, he would receive no "strikes" at all, as opposed to the 49 that would result from making 49 frivolous claims in a batch of 50 suits.

George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Hurdle has the authority to recommend inmates for the position. (<u>Id.</u> at 25, 26.) Hurdle allegedly replied, "Groomes, I'm just gonna be honest with you, ain't no way in hell I'm gonna put your big ass in my kitchen to eat up all the food." (<u>Id.</u> at 27.) Plaintiff is 6'3" and weighs 350 pounds, and he considered the comment to be "unprofessional, inappropriate and insensitive." (<u>Id.</u>) Another inmate, Eric Biggs, who had previously been fired from the position because of a disciplinary infraction, was rehired to fill the vacancy. (<u>Id.</u> at 19, 27.) Plaintiff contends that Defendant Hurdle discriminated against him on the basis of his size and weight. (<u>Id.</u> at 28.)

Administration segregation inmates are confined to their cells for at least twenty-three (23) hours of each day. Inmates receive one hour of outside recreation every other day, but outside recreation is cancelled in the event of rain or freezing temperatures. (<u>Id.</u> at 15, 41-45.) Because Plaintiff has never had a job at the WTSP, he cannot afford the $2 per month fee for cable television in his cell. (<u>Id.</u> at 16, 49-50.) Since cable service was installed in February, 2007, the antenna previously used for broadcast channels is no longer functional, so Plaintiff often has no television service. (<u>Id.</u> at 50-51.)

Plaintiff alleges that the power to the outlets in his cell was off from August 27, 2007 until September 5, 2007. (<u>Id.</u> at

23, 45-49.)[3] Plaintiff allegedly told Defendant Flowers, on several occasions, that he had no electricity, and Flowers assured him that he had submitted a work order. (Id. at 23, 45-46.) A maintenance worker told Plaintiff no work order was received. (Id. at 46.) Plaintiff also notified Defendants Moffitt and Hurdle that his power was out. (Id. at 23, 46.) None of the defendants moved Plaintiff to another cell until his electricity was restored. (Id.) The issue was resolved on September 5, 2007, when Plaintiff refused to come off the rec yard to protest the power outage, and WTSP Assistant Warden for Operations Ross Bates, who is not a party to this action, ordered that the repair be made. (Id. at 14, 47-48.) Plaintiff contends this period without working power outlets violated his Eighth Amendment rights, as he was unable to use his television. (Id. at 49.)

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

---

[3] Because the complaint makes clear the power outage was limited to the "outlets," it does not appear that the lights in Plaintiff's cell or the temperature controls were affected. (See id. at 45-47.)

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint is subject to dismissal in its entirety.

Plaintiff has sued all defendants in their individual and official capacities. However, the claims against Defendants in their official capacities are, effective, asserted against the State of Tennessee. Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984). Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Pennhurst, 465 U.S. at 98-100; Quern v. Jordan, 440 U.S. 332 (1979). Tennessee has not waived its sovereign immunity. Tenn. Stat. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. Lapides v. Board of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Will v. Michigan, 491 U.S. 58, 71 (1989).

Therefore, Plaintiff's claims for money damages against Defendants in their official capacities is barred by the Eleventh Amendment and are not cognizable under § 1983. Plaintiff's claims for injunctive relief against Defendants in their official capacities are not cognizable under § 1983. These claims are DISMISSED, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & (iii) and 1915A(b)(1) & (2).

The complaint contains no factual allegations about Defendants Little and Steward. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." <u>Spruytte v. Walters</u>, 753 F.2d 498, 500 (6th Cir. 1985).

Defendant Little cannot be held liable because of his position as TDOC Commissioner, Defendants Parker and Steward cannot be held liable because of their positions as Warden and Deputy Warden, respectively, of the WTSP, and Defendant Smith cannot be held liable because of her position as Unit Manager. There is no <u>respondeat superior</u> liability under § 1983. <u>Bellamy v. Bradley</u>, 729 F.2d 416, 421 (6th Cir. 1984). Instead,

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

<u>Id.</u> (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999); <u>Lillard v. Shelby County Bd. of Educ.</u>, 76 F.3d 716, 727-28 (6th Cir. 1996). In this case, with the sole exception of the claim that Defendant Parker failed periodically to review Plaintiff's assignment to IAS,

the complaint contains no allegations that Defendants Little, Parker, Steward, and Smith "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," Bellamy, 729 F.2d at 421, or that the allegedly unconstitutional conduct described in the complaint was the direct result of the failure of Defendants Little, Parker, Steward, and Smith to perform a function he or she was legally obligated to perform, Doe v. Claiborne County, Tenn., 103 F.3d 495, 511-12 (6th Cir. 1996). The standard is not satisfied by allegations that a defendant mishandled a grievance or failed to investigate a complaint. Shehee, 199 F.3d at 300; see also George v. Smith, 507 F.3d at 609-10 ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Therefore, even if it were assumed that the complaint alleges one or more constitutional violations, Defendants Little, Parker, Steward, and Smith could not be personally liable to Plaintiff.

Plaintiff also cannot sue any defendant for refusing to give him a grievance form, or for improperly handling or processing his grievances, because there is no cause of action for the improper adjudication of, or failure to adjudicate, an inmate's

grievances. Pursuant to 42 U.S.C. § 1997e(b), "[t]he failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title." See also Arque v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003); Shehee, 199 F.3d at 300; Smith v. Corrections Corp. of Am., 19 F. App'x 318, 321 (6th Cir. 2001) (holding that prisoner "had no constitutional right to . . . disciplinary or grievance systems that met his standards"); Irvin v. Fluery, No. 2:07-cv-117, 2007 WL 3036493, at *3 (W.D. Mich. Oct. 16, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access to an institutional grievance procedure."; Mackey v. Carberry, No. 2:07-cv-43, 2007 WL 2479296, at *3 (W.D. Mich. Aug. 28, 2007); Robertson v. Montgomery County, No. 3 06 0435, 2006 WL 1207646, at *2 (M.D. Tenn. Apr. 27, 2006) ("[S]tate law does not create a liberty interest in the grievance procedure."). The fact that there is no effective grievance system for inmates confined at Unit 1 of the WTSP may be sufficient to default a motion to dismiss the complaint, pursuant to 42 U.S.C. § 1997e(a), for failure to exhaust administrative remedies, but it does not give rise to an independent cause of action.

Plaintiff also has no due process claim for his confinement in IAS due to his membership in a gang. In general, an inmate does not have a liberty interest in a particular security classification or in freedom from administrative segregation. Olim

v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Newell v. Brown, 981 F.2d 880, 883 (6th Cir. 1992); Beard v. Livesay, 798 F.2d 874, 876 (6th Cir. 1986). As the Supreme Court explained in rejecting a due process challenge to a prison disciplinary conviction:

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. . . .
>
> . . . .
>
> . . . We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). Thus, an inmate generally cannot maintain a due process claim based on his confinement in administrative segregation. See Harbin-Bey v. Rutter, 420 F.3d 571, 576-77 (6th Cir. 2005) (designation as member of a security theat group and permanent restrictions imposed as a result of that designation not an atypical and significant hardship in relation to the ordinary incidents of prison life); Sarmiento v. Hemingway, 93 F. App'x 65, 66 (6th Cir. 2004) ("Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the

case."); <u>Utley v. Campbell</u>, 84 F. App'x 627, 629 (6th Cir. 2003)
("In order to state a claim of a denial of due process during a
disciplinary hearing, Utley was required, and failed, to show that
he had been subjected to an atypical and significant hardship.");
<u>Williams v. Wilkinson</u>, 51 F. App'x 553, 556-57 (6th Cir. 2002); <u>see
also</u> <u>Jones v. Baker</u>, 155 F.3d 810 (6th Cir. 1998) (administrative
segregation); <u>Mackey v. Dyke</u>, 111 F.3d 460 (6th Cir. 1997);
<u>Bruggeman v. Paxton</u>, No. 00-3917, 2001 WL 861678, at *1 (6th Cir.
June 30, 2001). Likewise, the Sixth Circuit has rejected a claim by
a prisoner challenging his designation as a member of a STG. <u>Ford
v. Harvey</u>, 106 F. App'x 397, 399 (6th Cir. 2004) ("Ford's
designation as a 'Security Threat Group Member' is nothing more
than a security classification used by the prison. Because Ford
does not have a constitutional right to a particular security level
or classification, he fails to state a claim."); <u>Ford v. Martin</u>, 49
F. App'x 584, 586 (6th Cir. 2002) (rejecting claim that defendants
violated plaintiff's rights to due process and equal protection
when they designated him a security threat group member without a
hearing; "To the extent that Ford has argued that the defendants
improperly changed his security classification, such
reclassification does not constitute an atypical and significant

hardship on him because a prisoner has no right to a particular security level.").[4]

Plaintiff does not challenge his original IAS classification, or the procedures that resulted in his assignment to IAS but, instead, contends that the failure to review his placement on a monthly basis, as required by TDOC policy, violates his rights to due process. Violations of TDOC policy are not actionable under 42 U.S.C. § 1983, which, on its fact, applies only to deprivations of rights secured by the United States Constitution and federal law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49 (1999). Moreover, TDOC policy does not create a constitutionally protected liberty interest. Taylor v. Dukes, 25 F. App'x 423, 424 (6th Cir. 2002); Smith v. Bradley, No. 94-5351, 1995 WL 241996, at *4 (6th Cir. Apr. 25, 1995). Makoka v. Cook, No. M2001-01013-COA-R3-CV, 2001 WL 31730880 (Tenn. Ct. App. Dec. 5, 2002); see also Harrison v. Raney, 837 F. Supp. 875, 880 (W.D. Tenn. 1993) ("TDOC regulations do not create a liberty interest requiring state officials to afford due process under the

---

[4]    The Supreme Court's decision in Wilkinson v. Austin, 545 U.S. 209 (2005), is not to the contrary. In Wilkinson, the Supreme Court found that prisoners had a liberty interest in avoiding assignment to a supermax facility because the harsh conditions at that facility, taken together, "impose an atypical and significant hardship within the correctional context." Id. at 223-24. In this case, Plaintiff does not allege that the conditions in IAS satisfy this standard. Specifically, unlike Wilkinson, 545 U.S. at 223-24, there is no allegation that inmates are prohibited from talking with each other or that assignment to IAS effects an inmate's parole eligibility. Moreover, the complaint makes clear that some inmates assigned to IAS have the opportunity to hold prison jobs. See Heard v. Caruso, No. 2:05-cv-231, 2007 WL 436065, at *1 (W.D. Mich. Feb. 6, 2007) (distinguishing the conditions of confinement on inmates found to be members of security threat groups from those in Wilkinson).

Fourteenth Amendment before either reclassification or transfer of inmates in TDOC custody.").[5] Finally, although the complaint alleges that some of the monthly reviews were not performed, it appears Plaintiff's IAS placement is reviewed at least several times a year, more frequently than the annual reviews that passed constitutional muster in <u>Wilkinson v. Austin</u>, 545 U.S. 209, 224, 230 (2005).

Plaintiff also has no claim based on Defendant Hurdle's failure to hire him to work in the kitchen. The Sixth Circuit has consistently rejected claims by prisoners based on their loss of, or failure to be assigned to, a prison job. <u>See, e.g.</u>, <u>Shields v. Campbell</u>, No. 03-5635, 2003 WL 22905312, at *1 (6th Cir. Nov. 26, 2003); <u>Carter v. TDOC</u>, 69 F. App'x 678, 680 (6th Cir. 2003); <u>Jewell v. Leroux</u>, 20 F. App'x 375, 377 (6th Cir. 2001); <u>Dellis v.</u>

---

[5]     The Sixth Circuit previously held, in <u>Beard v. Livesay</u>, 798 F.2d 874 (6th Cir. 1986), that Tennessee law and TDOC policy created a liberty interest precluding inmates from reclassifications without a hearing. As the Court noted in <u>Harrison v. Raney</u>, however,

> the regulations and their descendants, adopted since <u>Beard</u>, have eliminated the mandatory language that limits the discretion of the warden in classification decisions. . . .
>
>     . . . TDOC Reg. 401.05 lacks any mandatory language that would require the warden to base his decision on particular criteria, or to make a decision differently because of such criteria. Equally clearly, TDOC Reg. 401.08, enunciating the procedures to be used in conducting the classification hearing, does not contain any explicitly mandatory language that would limit the warden's discretion on classification decisions. Furthermore, the regulation explicitly confers unlimited discretion on the warden.

837 F. Supp. at 879-80; <u>see also</u> <u>Meeks v. Reynolds</u>, No. 93-6089, 1994 WL 443446, at *1 (6th Cir. Aug. 15, 1994) ("The policies in effect at the time of Meeks's reclassification and transfer do not include limitations on discretion sufficient to create a liberty interest"), <u>aff'g</u> Civ. No. 3-92-434, 1993 Wl 741856 (E.D. Tenn. July 6, 1993); <u>Franklin v. Gilless</u>, 870 F. Supp. 792, 794 (W.D. Tenn. 1994).

Corrections Corp. of Am., 257 F.3d 508, 511 (6th Cir. 2001); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987).

Plaintiff's claim of discrimination due to his size and weight arises under the Equal Protection Clause of the Fourteenth Amendment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 335 (6th Cir. 1990) (quoting Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989) (en banc )).[6] If the plaintiff is a member of a class that is not "protected," the plaintiff's class "merits constitutional protection only insofar as the state actor could have had no conceivable rational basis for distinguishing it." Purisch v. Tennessee Technological Univ., 76 F.3d 1414, 1424 (6th Cir. 1996).

In this case, the complaint does not allege that Plaintiff was discriminated against because of his membership in a protected class. The law is clear that prisoners are not a protected class for equal protection purposes. See, e.g., Harbin-Bey v. Rutter, 420 F.3d 571, 576 (6th Cir. 2005); Berry v. Traughber, 48 F. App'x 483, 485 (6th Cir. 2002); Garrison v. Walters, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24,

---

[6]    Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right. For the reasons discussed supra, Plaintiff has no fundamental right to a prison job.

2001); <u>Heddleston v. Mack</u>, No. 00-1310, 2000 WL 1800576, at *2 (6th Cir. Nov. 30, 2000) ("prisoners incarcerated at the same institution as Heddleston who wished to mail items weighing more than one pound on January 9, 1999, do not constitute a protected class"); <u>Aldred v. Marshcke</u>, No. 98-2169, 1999 WL 1336105, at *1 (6th Cir. Dec. 20, 1999); <u>Shehee v. Luttrell</u>, 199 F.3d 295, 301 (6th Cir. 1999); <u>Preston v. Hughes</u>, No. 97-6507, 1999 WL 107970, at *1 (6th Cir. Feb. 10, 1999); <u>Hampton v. Hobbs</u>, 106 F.3d 1281, 1286 (6th Cir. 1997). There also is no authority for holding that Plaintiff is a member of a protected class due to his size and weight.

Although the disparate treatment of Plaintiff is arguably subject to rational-basis scrutiny, Defendant Hurdle's stated rationale for his failure to hire Plaintiff for the kitchen position is sufficiently plausible to defeat Plaintiff's Equal Protection claim.

Plaintiff's remaining claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment. <u>See generally</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992); <u>Wilson</u>, 501 U.S. at 298; <u>Brooks v. Celeste</u>, 39 F.3d 125, 127-28 (6th Cir. 1994); <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires

17

that the deprivation be "sufficiently serious." <u>Farmer</u>, 511 U.S. at 834; <u>Hudson</u>, 503 U.S. at 8; <u>Wilson</u>, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 303.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," <u>Farmer</u>, 511 U.S. at 834; <u>Stewart v. Love</u>, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," <u>Wilson</u>, 501 U.S. at 298 (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" <u>Wilson</u>, 501 U.S. at 298 (quoting <u>Rhodes</u>, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Rhodes</u>, 452 U.S. at 347).

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate this risk in its prisons. <u>Helling v.</u>

McKinney, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

Wilson, 501 U.S. at 304-05 (citations omitted; emphasis added); see also Thompson v. County of Medina, Ohio, 29 F.3d 238, 242 (6th Cir. 1994); Walker v. Mintzes, 771 F.2d 920, 925026 (6th Cir. 1985).

Applying these standards, Plaintiff's claim that he cannot afford cable television and that he frequently cannot access broadcast channels is too trivial to be actionable. The Supreme Court has recognized that "[t]here is, of course[,] a de minimis level of imposition with which the Constitution is not concerned." Ingraham v. Wright, 430 U.S. 651, 674 (1977); see also Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) (recognizing that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations" and that the courts may "weed out" such "inconsequential actions"); Dean v.

Conley, 20 F. App'x 294, 295 (6th Cir. 2001) ("The Constitution . . . does not provide an avenue of redress for de minimis events in the life of an inmate."); A'la v. Cobb, No. 98-5257, 2000 WL 303014, at *2 (6th Cir. Mar. 14, 2000) ("[S]ome level of significance is required in order for the actions of prison officials to implicate constitutional concerns. De minimis events simply do not state constitutional claims."). "[T]elevision [is] not necessary for a civilized life." Rahman X v. Morgan, 300 F.3d 970 (8th Cir. 2002); see also Hudson v. Lincoln County, Tenn., 39 F. App'x 219, 220 (6th Cir. 2002) (no access to television or newspapers in segregation); Smith v. Sapp, Nos. 97-5642, 97-5921, 1998 WL 384620 (6th Cir. June 19, 1998) ("[F]orcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim."); Coleman v. Granholm, No. 06-12485, 2008 WL 919642, at *14 (E.D. Mich. Apr. 2, 2008) (report and recommendation); Schroeder v. Corrections Corp. of Am., No. 4:07 CV 3832, 2008 WL 373478, at *2 (N.D. Ohio Feb. 8, 2008) ("There is nothing in the complaint which suggests that no hot meals, television, microwave ovens, telephones, vocational or educational training, or recreation for five days constitutes the type of deprivation which triggers Eighth Amendment protections."); Aldridge v. 4 John Does, No. Civ.A. 5:00-CV-17-J, 2005 WL 2428761, at *7 (W.D. Ky. Sept. 30, 2005) ("This Court finds that limited

telephone privileges and a lack of television do not rise to the level of cruel and unusual punishment."); Gawloski v. Dallman, 803 F. Supp. 103, 111 (S.D. Ohio 1992). As the inability to watch television is the only tangible deprivation resulting from the power outage to the outlet in Plaintiff's cell, it necessarily follows that the failure promptly to repair the outlet, or to move Plaintiff to another cell for the ten (10) days he was without a working outlet, does not violate the Eighth Amendment.

With respect to the claim that Plaintiff is confined to his cell and afforded limited opportunity for exercise, the confinement of inmates to their cells for twenty-three (23) hours a day does not violate the Eighth Amendment. Argue v. Hofmeyer, 80 F. App'x 427, 429 (6th Cir. 2003); In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999); see also Coleman v. Bradley, No. 1:07-cv-468, 2007 WL 2461699, at *3 (W.D. Mich. Aug. 27, 2007) (dismissing claim that inmate was confined to his cell from noon to midnight for 30 days); Bagetta v. Carusos, No. 1:07-CV-289, 2007 WL 1577830, at *4 (W.D. Mich. May 30, 2007) (dismissing claim that inmates are confined to their cells on weekdays, because "[t]he federal courts have held that similar and even longer periods of cell confinement do not violate the Eighth Amendment").

The complaint alleges that Plaintiff has the opportunity for outside exercise three or four days a week. The Sixth Circuit

has not "set a minimum amount of time a prisoner must have access to outdoor recreation, Argue, 80 F. App'x at 430; Rodgers v. Jabe, 43 F.3d 1082, 1086-87 (6th Cir. 1995); Walker, 771 F.2d at 927-28; Carruthers v. Mills, No. 06-2259-B/P, 2007 WL 676718, at *4 (W.D. Tenn. Mar. 1, 2007); Conyers v. Michigan Dep't of Corrections, No. 5:06-CV-100, 2006 WL 2644990, at *6 (W.D. Mich. Sept. 14, 2006) (dismissing claim of inadequate exercise where "Plaintiff does not allege that he is denied sufficient opportunity for exercise in order to maintain reasonably good health."). Plaintiff does not allege that he is unable to exercise while confined to his cell.

The Court therefore DISMISSES the remainder of the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. The motion for appointment of counsel is DENIED as moot.

III. Appeal Issues

Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal in

forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if Plaintiff appeals the dismissal of this case. In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, Plaintiff is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and 28 U.S.C. § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this 25th day of August, 2008.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE